UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

TIMOTHY JAMES C.,

                            Plaintiff,

                                                              5:22-cv-01146
v.                                                            (MAD/TWD)

KILOLO KIJAKAZI, Acting Commissioner of Social
Security Administration,

                            Defendant.

_____

APPEARANCES:                              OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC        JUSTIN M. GOLDSTEIN, ESQ.
6000 North Bailey Avenue - Suite 1A
Amherst, NY 14226
Attorneys for Plaintiff

SOCIAL SECURITY ADMINISTRATION            VERNON NORWOOD, ESQ.
OFFICE OF THE GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235
Attorneys for Defendant

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

Timothy James C. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or

"Defendant") denying his application for Disability Insurance Benefits ("DIB"). (Dkt. No. 1.)

Plaintiff did not consent to the jurisdiction of a Magistrate Judge. (Dkt. No. 8.) Both parties

filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure Rule 12(c),

in accordance with General Order 18. (Dkt. Nos. 13, 15.) Plaintiff filed a reply. (Dkt. No. 16.)

For the reasons set forth below, the Court recommends denying Plaintiff's motion and granting Defendant's motion.

## I.    BACKGROUND

Plaintiff was born in 1963 and has a high school education.  (Administrative Transcript at 32, 245, 250.[1])  He previously worked as an assembler and security guard.  (T. 33, 266-68.)  On June 12, 2020, Plaintiff protectively filed for DIB under Title II of the Social Security Act alleging disability beginning May 12, 2020, due to a left shoulder rotator cuff tear and high blood pressure.  (T. 222-25, 249.)  The application was denied initially on December 29, 2020, and upon reconsideration on May 17, 2021.  (T. 69, 91.)  On October 29, 2021, Administrative Law Judge ("ALJ") John P. Ramos conducted a telephone hearing during which Plaintiff and vocational expert ("VE") Peter Manzi testified.  (T. 28-51.)  On November 3, 2021, the ALJ denied Plaintiff's claim.  (T. 10-18.)  This decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on September 6, 2022.  (T. 1-6.)  Plaintiff commenced this action on November 2, 2022.  (Dkt. No. 1.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard of Review

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013).  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004)

---

[1]  The Administrative Transcript is found at Dkt. No. 11.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.  Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

(internal quotation marks and citation omitted).  Accordingly, a reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986-87 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted).  If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive.  42 U.S.C. Sec 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).  Furthermore, where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  A reviewing court cannot substitute its interpretation of the administrative

record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d, 34, 39 (2d Cir. 1996). Remand may also be appropriate where the ALJ has failed to develop the record, adequately appraise the weight or persuasive value of witness testimony, or explain his reasonings. *See Klemens v. Berryhill*, 703 F. App'x 35, 35-38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008); *Pratts*, 94 F.3d at 39.

### B.    Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he should be hired if he applied for work.

---

[2] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health of Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

42 U.S.C. § (d)(2)(A).

The Social Security Administration regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess*, 537 F.3d at 120); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). "If at any step a finding of disability or non-disability can be made, the SSA will not handle the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working. *Id.*

## III.    THE ALJ'S DECISION

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. (T. 10-18.)  Initially, the ALJ determined Plaintiff meets the insurance status requirements for DIB through December 31, 2025. (T. 12.)  At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since May 12, 2020, the alleged onset date. *Id.*  At step two, the ALJ found Plaintiff has the following severe impairments: left shoulder rotator cuff tear, degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, and malignant neoplasm of the prostate. *Id.*

Proceeding to step three, the ALJ determined Plaintiff's impairments did not meet or medically equal the criteria of any listed impairment.  (T. 13.)

Before proceeding to step four, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) "except frequently climbing ramps, stairs, ladders, ropes, and scaffolds.  He can frequently balance, stoop (i.e. bending at the waist), and kneel.  He should avoid overhead reaching with the left arm."  *Id*.  In making the RFC determination, the ALJ stated he considered all of Plaintiff's symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence," based on the requirements of 20 C.F.R. § 404.1529 and Social Security Rule ("SSR") 16-3p.  *Id*.  The ALJ further noted he considered the opinion evidence and prior administrative medical findings pursuant to 20 C.F.R. § 404.1520c.  *Id*.  After considering Plaintiff's statements regarding his symptoms, along with the other evidence of record, the ALJ concluded Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (T. 14.)

At step four, the ALJ determined Plaintiff could perform his past relevant work as an assembler as generally performed.  (T. 17.)  Accordingly, the ALJ concluded Plaintiff was not disabled, as defined by the Social Security Act, from May 12, 2020, through the date of his decision.  *Id*.

## IV.    DISCUSSION

Plaintiff raises three arguments: (1) the ALJ erred when failing to identify substantial evidence supporting the RFC finding; (2) the ALJ erred in his evaluation of the medical opinions; and (3) the ALJ erred at step four and failed to resolve the apparent conflict between

the VE's testimony and the Dictionary of Occupational Titles ("DOT").  (Dkt. No. 13 at 1, 9-21;

Dkt. No. 16 at 1-7.)  Defendant contends the Commissioner's determination should be affirmed

because it was supported by substantial evidence and free of legal error.  (Dkt. No. 15 at 12-21.)

### A.    RFC Determination and Evaluation of Medical Opinions

#### 1.    Legal Standards

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations."

20 C.F.R. § 404.1545(a)(1).  The ALJ is responsible for determining Plaintiff's RFC based on a

review of relevant medical and non-medical evidence, including any statement about what

Plaintiff can still do, provided by any medical sources.  *Id.* §§ 404.1527(d), 404.1545(a)(3),

404.1546(c).  Thus, the ALJ is tasked with the responsibility of reviewing all the evidence,

resolving inconsistencies, and making a determination consistent with the evidence as a whole.

*Camarata v. Colvin*, No. 6:14-CV-0578 (MAD/ATB), 2015 WL 4598811, at *9 (N.D.N.Y. July

29, 2015).  The RFC determination "must be set forth with sufficient specificity to enable [the

Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v.

Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Although the ALJ has the responsibility to determine

the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate

functional limitations that preclude any substantial gainful activity.  20 C.F.R. §§ 404.1512(a),

404.1545(a), 404.1546(c), 416.945(a), 416.946(c).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

prior administrative medical finding(s), including those from [the claimant's] medical sources."

20 C.F.R. § 404.1520c(a).  Further, when a medical source provides one or more medical

opinions, the Commissioner will consider those medical opinions from that medical source

together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections.  *Id.*

Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4)

specialization; and (5) any other factors that "tend to support or contradict a medical opinion or

prior administrative medical finding."  *Id.* § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are

supportability and consistency.  *Id.* § 404.1520c(a).  With respect to supportability, "[t]he more

relevant the objective medical evidence and supporting explanations presented by a medical

source are to support his or her medical opinion(s) or prior administrative medical finding(s), the

more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* §

404.1520c(c)(1).  With respect to "consistency," the new regulations provide that "[t]he more

consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence

from other medical sources and nonmedical sources in the claim, the more persuasive the

medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* § 404.1520c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including

how persuasive he finds the medical opinions in the case record.  *Id.* at § 404.1520c(b).

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference

to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still

articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s]

all of the medical opinions."  *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020

WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted).  Specifically, the

ALJ must explain how he considered the "supportability" and "consistency" factors for a

medical source's opinion.  20 C.F.R. § 404.1520c(b)(2).  The ALJ may—but is not required to—

explain how he considered the remaining factors.  *Id.*

An ALJ commits a "procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record." *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022). However, a court can "affirm if 'a searching review of the record' assures [the court] 'that the substance of the [regulation] was not traversed.'" *Id.* (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).

### 2.    Opinion Evidence

In connection with his assessment of Plaintiff's RFC, the ALJ addressed the opinions from consultative examiner Rita Figueroa, M.D.; state agency consultants J. Lawrence, M.D., and G. Ehlert, M.D.; and independent examiner Robert Karpman, M.D. (T. 14-15, 60-66, 82-88, 434-37, 838-42, 878-82.) Of these, the ALJ was persuaded by the opinions of Dr. Lawrence and Dr. Ehlert and less persuaded by Dr. Figueroa's and Dr. Karpman's opinions. (T. 14-15.)

### a.    Rita Figueroa, M.D.

On September 17, 2020, Dr. Figueroa consultatively examined Plaintiff. (T. 434-37.) Prior to the examination, Plaintiff reported sustaining a left shoulder injury on November 12, 2019. (T. 434.) He had physical therapy for six weeks and two cortisone injections "without help." *Id.* Plaintiff reported difficulty reaching above the shoulder and complained of constant pain rate rated anywhere between a 4-10. *Id.* He also complained of bilateral knee pain since his early 40s, stating the right knee is the worst. *Id.* He reported lifting and carrying up to 20 pounds was difficult; he is able to squat but has a "hard time coming up." *Id.* Squatting hurts, kneeling over three minutes is painful, and standing for a long time makes the knees burn. Id. The right knee is worse than the left. *Id.* He takes Motrin. *Id.* He denied a history of hypertension. *Id.* In terms of daily living, Plaintiff reported he lived alone, cooked, cleaned, washed his laundry, and shopped for groceries. (T. 435.)

During the exam, Plaintiff appeared in no acute distress. *Id*. He demonstrated a normal gait and the ability to walk on his heels "however the right knee was weak." *Id*. His squat was full, and his stance was normal. *Id*. He used no assistive devices and did not require any assistance changing for the examination, getting on and off the examination table, or rising from a chair. *Id*.

Upon examination, Dr. Figueroa found full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally in both the cervical spine and lumbar spine. *Id*. The straight leg raise test was negative bilaterally. *Id*. Plaintiff's shoulders and knees showed limited ranges of motion. *Id*. He had full range of motion of his elbows, wrists, hips, and ankles bilaterally. *Id*. Plaintiff had 5/5 strength in the upper and lower extremities. *Id*. His hand and finger dexterity were intact, and his grip strength was 5/5 bilaterally. (T. 436.) His joints were stable and nontender. *Id*.

Dr. Figueroa observed muscle atrophy of the left rotator cuff, biceps, and triceps. *Id*. She reviewed diagnostic images from September 2020, showing degenerative disc disease of the lumbar spine and chondrocalcinosis of the right knee. (T. 436, 438, 439.) Dr. Figueroa diagnosed left rotator cuff injury and chronic bilateral knee pain. (T. 437.) Plaintiff's prognosis was fair. *Id*.

In a medical source statement, Dr. Figueroa opined Plaintiff will have moderate limitations to reaching, pushing, and pulling; mild-to-moderate limitations to prolonged walking, standing, repetitive kneeling, squatting, and crawling; and moderate limitations for lifting, carrying, reaching, pushing, and pulling with the left arm. *Id*.

**b.    J. Lawrence, M.D.**

Dr. Lawrence reviewed Plaintiff's then-current medical records on December 29, 2020.

(T. 60-66.)  He opined Plaintiff could occasionally lift and/or carry up to fifty pounds and

frequently lift and/or carry twenty-five pounds.  (T. 62.)  Plaintiff could stand and/or walk for

about six hours and sit for more than six hours during an eight-hour workday.  *Id*.  Plaintiff had

no limitations pushing or pulling.  *Id*.  Dr. Lawrence opined Plaintiff could frequently climb

ramps, stairs, ladders, ropes, and scaffolds.  (T. 63-64.)  He could frequently balance, kneel,

crouch, and crawl.  *Id*.  He could frequently reach overhead on the left.  (T. 64.)

Dr. Lawrence concluded the "overall evidence" in the file indicates an RFC for medium

work with the additional restrictions identified above.  (T. 66.)  In support of his opinion, Dr.

Lawrence cited to Plaintiff's activities of daily living, self-reports, and the physical examinations

from November 2019 through November 2020, along with Dr. Figueroa's September 2020

consultative examination.  (T. 64-66.)  In addition, Dr. Lawrence referenced multiple imaging

reports, including a November 2019, x-ray of Plaintiff's left shoulder, which showed findings

suggestive of calcific tendinopathy without any acute fracture or dislocation.  (T. 64, 336-37.)  A

subsequent MRI scan of the left shoulder in January 2020 revealed calcific tendinosis with a

partial tear of the rotator cuff, degenerative joint disease of the acromioclavicular joint, and

impingement.  (T. 64, 375-76.)  A September 2020 lumbar spine x-ray showed osteophytosis at

L4-L5 and L5-S, and a September 2020 right knee x-ray revealed chondrocalcinosis.  (T. 65,

438, 439.)

**c.    G. Ehlert, M.D.**

Dr. Ehlert reviewed Plaintiff's then-current medical records on May 13, 2021.  (T. 82-

88.)  Dr. Ehlert opined Plaintiff could occasionally lift and/or carry up to twenty pounds and

frequently lift and/or carry ten pounds.  (T. 85.)  In all other respects, Dr. Ehlert affirmed Dr. Lawrence's opinion.  (T. 85-86.)

In explaining the reasons for this opinion, Dr. Ehlert cited extensively to the record including Plaintiff's description of his symptoms and daily activities; diagnostic images; and treatment notes including multiple physical examinations indicating limited range of motion of his left shoulder with tenderness on palpitation, pain with SLAP and O'Brien's testing, pain with Neer and Hawkin's impingement tests, pain with crossover test, as well as examinations indicating no pain to palpation, no pain with cross arm adduction, no tenderness, full range of motion of elbows, hands, and wrists, full grip strength, and full muscle strength throughout.  *See id*.

Dr. Ehlert reviewed Dr. Figueroa's consultative examination report and ultimately determined Dr. Figueroa's "opinion is not supported or consistent with the overall evidence in the file and appears to be an overestimation of the claimant's limitations based on a one-time CE event relying heavily on the claimant."  (T. 62, 67, 84, 89.)  Dr. Ehlert also reviewed records relating to Plaintiff's elevated prostate specific antigen, a March 2021 diagnosis of prostate cancer, and encounter notes from April 202 showing Plaintiff underwent a laparoscopic prostatectomy and related treatment.  (T. 87-88.)

In assessing an RFC for light work, Dr. Ehlert explained the "[t]otality of evidence reviewed supports a more restrictive limitation . . . due to pain and reduced [range of motion] of shoulder along with abnormal imaging of knee and lumbar spine with associated pain as well as new DX of PCa."  (T. 88.)

### d.    Robert Karpman, M.D.

Dr. Karpman examined for purposes of a workers' compensation claim on December 1, 2020, and June 24, 2021.  (T. 838-42, 878-82.)  His report indicated he also reviewed Plaintiff's medical records.  *Id*.  During the examinations, Plaintiff complained of chronic left shoulder pain following a November 15, 2019, work-related accident.  (T. 838, 839, 878, 880.)

During the December 2020 examination, Plaintiff reported he could walk two city blocks, had difficulty with stairs, and stated reaching overhead made the pain worse.  (T. 880.)  On exam, the left shoulder was tender to palpitation.  *Id*.  Range of motion was limited.  *Id*.  There was no muscle effusion, muscle atrophy, or crepitus.  *Id.*  Impingement sign was positive; crossover test was positive; O'Brien's test was negative.  *Id*.  Dr. Karpman diagnosed left shoulder rotator cuff tendinosis-acromioclavicular ("AC") joint arthritis.  *Id*.  Dr. Karpman assessed, "[t]his individual is capable of working with the following restriction: avoid lifting more than 5 pounds with the left arm and avoid working above the shoulder with the left arm." (T. 881.)

During the June 2021 examination, Plaintiff stated he could walk one city block, sit for 20 minutes, and had difficulty with stairs.  (T. 839.)  On examination of the left shoulder, there was no tenderness to palpitation, no effusion, no muscle atrophy, and no crepitus.  *Id*.  Range of motion was limited.  (T. 840.)  Impingement sign was negative; cross arm test was positive; O'Brien's test was negative.  *Id*.  Plaintiff also had limited range of motion of the right shoulder. *Id*.  Dr. Karpman opined, "[t]his individual is capable of performing activities of daily living with the following restrictions: avoid lifting more than 5 pounds."  (T. 841.)

3.      **Analysis**

As discussed, the ALJ found Plaintiff could perform a range of light work with postural and reaching limitations.  (T. 13.)  Plaintiff argues the ALJ erred when failing to identify substantial evidence supporting the RFC and failed to weigh the medical opinions pursuant to the regulations.  (Dkt. No. 13 at 9-21; Dkt. No. 16 at 1-7.)  The Court disagrees.

Here, the ALJ crafted Plaintiff's RFC based on the totality of the evidence.  *See Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018) (the ALJ is obligated to formulate a claimant's RFC based on the record as a whole, not just upon the medical opinions alone).  The regulations define light work as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involved sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).  As set forth above, Dr. Ehlert opined Plaintiff could lift twenty pounds occasionally and ten pounds frequently; Dr. Lawrence opined Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently.  (T. 60-66, 82-88.)  They both opined Plaintiff could stand, walk, and or/sit for six hours in an eight out day, and could frequently perform postural activities with no pushing or pulling limitations.  *Id*.

It is well-settled the ALJ was entitled to rely on the opinions of Drs. Ehlert and Lawrence because state agency consultants are qualified experts in the field of social security disability.  20 C.F.R. § 404.1527(e); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012); *see, e.g.*, *Christina M. v. Saul*, No. 3:18-cv-00332 (CFH), 2019 WL 3321891, at*6 (N.D.N.Y. July 24, 2019) (explaining that it is "within the ALJ's purview to rely on the opinion" of a state

agency physician who reviewed the evidence); *Tamara M. v. Saul*, No. 3:19-CV-1138 (CFH), 2021 WL 1198359, at *7 (N.D.N.Y. Mar. 30, 2021) (acknowledging that even under the old regulations, the report of a non-examining state agency medical consultant may constitute substantial evidence under the appropriate circumstances); *Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) ("It is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence.").

Additionally, Dr. Figueroa assessed no more than moderate limitations in exertional and postural activities, which further lends support to the ALJ's RFC. "Courts in this circuit have consistently found that moderate limitations in a plaintiff's ability to perform exertional activities are consistent with an RFC for light work." *Ruiz v. Comm'r of Soc. Sec.*, 625 F. Supp. 3d 258, 268 (S.D.N.Y. 2022) (quoting *Renee L. v. Comm'r of Soc. Sec.*, No. 5:20-CV-00991 (TWD), 2022 WL 685285, at *9 (N.D.N.Y. Mar. 8, 2022) (collecting cases)); *see also Rayshown M. v. Comm'r of Soc. Sec.*, No. 6:20-CV-7001, 2022 WL 4298263, at *4 (W.D.N.Y. Sept. 19, 2022) ("[C]ourts in this Circuit have repeatedly upheld an ALJ's decision that a claimant could perform light work when there was evidence that the claimant had moderate difficulties in prolonged standing, walking, sitting, bending, or lifting.") (collecting cases).[3]  Similarly, "postural

---

[3]  *See also Amanda L. v. Saul*, No. 8:18-CV-01221 (NAM), 2019 WL 5865388, at *8 n.3 (N.D.N.Y. Nov. 8, 2019) ("[M]oderate limitations to repetitive lifting, bending, reaching, pushing, pulling, or carrying are not inconsistent with an RFC for a full range of light work.") (internal quotation marks and citation omitted); *Moore v. Comm'r of Soc. Sec.*, No. 1:16-CV-270 (DJS), 2017 WL 1323460, at *8 (N.D.N.Y. Apr. 10, 2017) ("[M]oderate limitations for sitting, standing, walking, bending, climbing stairs, and lifting or carrying heavy objects . . . [are] consistent with light work."); *Martinez v. Comm'r of Soc. Sec.*, Civ. No 13-159, 2016 WL 6885181, at *13 (S.D.N.Y. Oct. 5, 2016) ("[M]oderate restrictions for lifting, pushing, pulling, overhead reaching, stooping, squatting, prolonged standing, and prolonged walking . . . are consistent with an RFC for light work."); *Thola J.W. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1068 (GLS), 2021 WL 981589, at *2 (N.D.N.Y. Mar. 16, 2021) (finding RFC for a full range of light

limitations of moderate or lesser severity are generally considered consistent with the demands of light work." *Heidrich v. Berryhill*, 312 F. Supp. 3d 371, 374 n.2 (W.D.N.Y. 2018).

As to the only manipulative limitation, Drs. Lawrence and Ehlert assessed a "limitation of L overhead reaching to frequent, while Dr. Figueroa indicated a moderate limitation reaching. (T. 64, 86, 436.)  During the hearing, Plaintiff testified he cannot lift his left arm overhead, but explained he could reach out in front without significant difficulties.  (T. 42.)  Thus, the ALJ reasonably accounted for Plaintiff's left arm by restricting Plaintiff to avoiding overhead reaching with the left arm.  (T. 13.)

The ALJ also considered the objective medical evidence.  In addition to the diagnostic imaging, summarized above, the ALJ noted Plaintiff treated his left shoulder pain with cortisone injections, physical therapy, and medication.  (T. 15.)  The ALJ discussed emergency room records from November 2019, which showed normal motor functions, and normal tendon functions, with left shoulder tenderness and pain.   (T. 15, 337.)

The ALJ noted that in June 2020, Plaintiff had reduced range of motion of the left shoulder; Hawkin's and Kennedy's test was positive; AC crossover test was positive; the skin was intact; no erythema, edema, or ecchymosis was present; no pain to palpitation; muscle strength was 5/5 throughout; and radial pulse was +2.  (T. 15, 390.)  The ALJ discussed Dr. Figueroa's findings from September 2020, including a normal gait, full squat, full stance, negative straight leg raise test bilaterally, reduced range of motion in the left shoulder, and full strength in the upper and lower extremities.  (T. 15, 434-37.)

---

work was consistent with moderate limitations in lifting, carrying, pushing, and pulling); *Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (finding opinion of moderate limitations in "heavy lifting, bending, reaching, pushing, pulling, or carrying" consistent with RFC assessment for light work).

The ALJ noted that in October 2020, Plaintiff denied back pain and muscle pain. (T. 16, 445.) Plaintiff had tenderness in the left AC joint and was unable to reach left arm above shoulder and had tenderness. (T. 16, 447, 598.) Plaintiff had 5/5 strength bilaterally of the upper and lower extremities, grip motor strength was intact. *Id*. The following month, Plaintiff had mild tenderness on the left AC joint. (T. 15-16, 454.) Again, he had full range of motion of the upper extremities bilaterally; 5/5 motor strength in the upper and lower extremities; no edema in the lower extremities bilaterally, negative Romberg test, and +2/4 patellar deep tendon reflexes. *Id*.

In November 2020, Plaintiff's musculoskeletal evaluation was normal, and no neurological deficits were present. (T. 16, 450.) During another examination, Plaintiff had mild tenderness on the left AC joint, but had full range of motion of the upper extremities bilaterally; 5/5 motor strength in the upper and lower extremities; no edema in the lower extremities bilaterally; negative Romberg test; and +2/4 patellar deep tendon reflexes. (T. 16, 454.)

In December 2020, Plaintiff had decreased range of motion of the left shoulder with tenderness to palpation and positive impingement sign, but no effusion, no muscle atrophy, no crepitus, and negative O'Brien's test. (T. 16, 892.) In February 2021, no muscular tenderness was present, normal range of motion was evident, no swelling or tenderness was present, and no focal neurological deficits were noted. (T. 16, 617-18.) His gait was normal and stable. (T. 16, 621, 629, 750.) In March 2021, Plaintiff had normal range of motion without any edema present. (T. 16, 539.) In June 2021, Plaintiff had reduced range of motion of the left shoulder; positive cross-arm test; no tenderness along to palpation; no effusion present; no muscle atrophy; no crepitus was noted, negative impingement sign; negative O'Brien's test; no limp; and no antalgic

gait.  (T. 16, 840.)  In August and September 2021, examinations were within normal limits, including 5/5 strength in all extremities and a normal gait.  (T. 16, 1041, 1044, 1048-49.)

In addition to the overall objective evidence and the state agency reviewing and examining opinions, the ALJ also properly considered Plaintiff's daily activities and testimony. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole).

As the ALJ acknowledged, Plaintiff endorsed the ability to cook, clean, do laundry, shop, and tend to his personal care.  (T. 14-17, 435.)  In his function report, Plaintiff reported he could walk up to one quarter of a mile at a time and his impairments did not affect his ability to sit or stand.  (T. 263.)  He also reported difficulty standing for greater than 15 minutes before having to sit; walking more than 100 yards and lifting greater than a gallon of milk.  (T. 42.)  The ALJ noted Plaintiff lives alone, which also suggested a much higher level of daily functioning.  (T. 17.)  Thus, Plaintiff's activities of daily living and testimony, as evident from the record, further support the ALJ's finding Plaintiff could perform a reduced range of light work.  *See, e.g., Browne v. Comm'r of Soc. Sec.*, 131 F. Supp. 3d 89, 101 (S.D.N.Y. 2015) (finding activities such as preparing meals, ironing, laundry, going out alone, shopping, and walking five blocks before stopping to rest, supported RFC that plaintiff could perform light work); *Acevedo v. Saul*, 577 F. Supp. 3d 237, 250 (S.D.N.Y. 2021) (reasoning that a plaintiff's activities, such as going out alone and shopping in stores, supported a finding that a plaintiff could perform light work); *Simmons v. Colvin*, No. 13-CV-1724 (KBF), 2014 WL 104811, at *5-6 (S.D.N.Y. Jan. 8, 2014) (concluding that the plaintiff's testimony that she could walk several blocks and did her own cooking, cleaning, and laundry provided substantial evidence for an RFC finding limiting the plaintiff to light work).

Based on the foregoing, there was more than substantial support for the ALJ's finding, including the opinions of Drs. Lawrence, Ehlert, and Figueroa, the objective medical evidence, treatment records showing reduced range of motion but also full strength in the upper and lower extremities bilateral, intact hand grip strength, as well as Plaintiff's acknowledged activities and abilities. Accordingly, the Court finds no error.

Plaintiff argues the ALJ improperly cherry-picked or mischaracterized evidence to support his RFC determination. (Dkt. No. 13 at 13-19; Dkt. No. 16 at 3.) Specifically, Plaintiff claims the records of his treatment, which Dr. Karpman reviewed, supported greater restrictions than those found by the ALJ. But even if some treatment records might support greater restrictions, the ALJ's RFC determination still was supported by substantial evidence, as summarized above. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013).[4]

Overall, the ALJ's decision reflects a reasonable interpretation of the entire record and the Court finds Plaintiff's arguments unavailing. The ALJ's discussion of the evidence in this case is a far cry from selectively citing only evidence that is favorable to the ALJ's findings and

---

[4] The Court notes three of the four medical records indicating 4/5 strength in the left shoulder highlighted by Plaintiff predate the alleged onset date, while the fourth treatment note indicating reduced strength was the day after the alleged onset date. (Dkt. No. 15 at 15; T. 382, 3852, 393, 405.) All other clinical findings, including the consultative examiner's, indicated full (5/5) muscle strength, which, contrary to Plaintiff's assertion, also supports the ALJ's RFC determination. (T. 390, 436, 454, 460, 598.) *See, e.g., Secor v. Comm'r of Soc. Sec.*, No. 18-CV-6092 (SN), 2019 WL 4688661, at *4 (S.D.N.Y. Sept. 24, 2019) (finding treatment notes and consultative examiner's assessment indicating full strength in hands and upper and lower extremities supported a light exertional RFC); *Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 911-12 (W.D.N.Y. 2018) (finding progress notes of "5/5" strength supported finding that claimant was capable of light exertional work).

misstating evidence as Plaintiff argues.  (Dkt. No. 16 at 2-3.)  Indeed, the ALJ need not discuss every piece of evidence in the record in order to show it was considered.  *See Shari Lee Z. v. Saul*, No. 19-CV-0268 (GTS), 2019 WL 6840134, at *4 (N.D.N.Y. Dec. 16, 2019) (noting that "the relevant legal standards do not require the ALJ to discuss all of the evidence, but rather only to show that her decision is supported by substantial evidence"); *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 208 (N.D.N.Y. 2012) ("The ALJ is not required to specifically discuss each piece of evidence considered.").

"In general, under the substantial evidence standard of review, it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support [his] position . . . plaintiff must [instead] show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record."  *Jonathan S. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1177, 2022 WL 44700, *6 (W.D.N.Y. Jan. 5, 2022); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

Turning to the ALJ's evaluation of the opinion evidence, as noted, the ALJ was persuaded by Dr. Lawrence's and Dr. Ehlert's assessments.  (T. 14.)  The ALJ explained their assessments were supported by the diagnostic images in the record and the physical examination in record, which showed normal gait, negative straight leg raise test bilaterally, and full muscle strength.  (T. 14, 375-76, 394, 435-36, 438-39, 621, 629, 751.)  The ALJ further noted Dr. Ehlert's opinion was more persuasive than Dr. Lawrence's because Dr. Ehlert had more records to review on reconsideration.  (T. 14.)

In contrast, the ALJ stated he was less persuaded by the opinions of Dr. Figueroa and Dr. Karpman because the restrictions they identified were contradicted by the diagnostic images in

record.  (T. 15, 390, 435-36, 621, 629, 751.)  The ALJ further explained that while Dr. Karpman

indicated Plaintiff should avoid lifting greater than five pounds, Plaintiff had full strength in the

upper extremities, and intact hand grip strength, as discussed above.  (T. 15, 454, 460.)

Moreover, Dr. Karpman also acknowledged Plaintiff "was capable of performing activities of

daily living."  (T. 15, 856.)  The ALJ noted Dr. Figueroa found mild to moderate limitations for

prolonged walking and standing; yet she described his gait as normal and strength as normal in

the lower extremities.  (T. 15, 435-36.)  Lastly, the ALJ found their opinions "contradicted by the

relatively normal recent physical examinations" of record.  (T. 15, 1041, 1044, 1048-49.)

     "Although the ALJ did not use the words supportability and consistency in [his] decision,

it is clear the evidence [he] relied on in evaluating opinion evidence."  *William C. N. v. Comm'r*

*of Soc. Sec.*, No. 6:20-CV-6701 (WBC), 2023 WL 3612544, at *8 (W.D.N.Y. Mar. 9, 2023)

(citing *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 10 (W.D.N.Y. 2022) (finding it

was clear from the record that the ALJ found the opinion of the consultative examiner to be

inconsistent and not supported by other evidence in the record, including the historical record

and records from Plaintiff's treating sources)); *see also Beth F. v. Comm'r of Soc. Sec.*, No. 5:17-

CV-723 (ATB), 2019 WL 1517036, at *10 (N.D.N. Y Apr. 8, 2019) ("[T]he court is 'able to

look to other portions of the ALJ's decision and to clearly credible evidence in finding that [his]

determination was supported by substantial evidence.'" (quoting *Mongeur v. Heckler*, 722 F.2d

1033, 1040 (2d Cir. 1983)); *Amber H. v. Saul*, No. 20-CV-00490 (ATB), 2021 WL 2076219, at

*6 (N.D.N.Y. May 24, 2021) (ALJ provided sufficient explanation to allow a reviewing court to

"trace the path of [the] adjudicator's reasoning."  *Amber H. v. Saul*, No. 20-CV-00490 (ATB),

2021 WL 2076219, at *6 (N.D.N.Y. May 24, 2021) (quoting Revisions to Rules Regarding the

Evaluation of Medical Evidence, 2017 WL 168819 (F.R.), 82 Fed. Reg. 5844-01, at *5858 (Jan.

18, 2017) ("We expect that the articulation requirements in these final rules will allow a . . . reviewing court to trace the path of an adjudicator's reasoning . . . .")).

Nonetheless, even if the ALJ committed procedural errors as Plaintiff contends, a review of the record, as discussed above, assures the Court that "the substance of the [regulation] was not traversed" and any error was harmless. *Loucks*, 2022 WL 2189293, *2 (citations omitted). Therefore, remand is not required on this basis. *See Ricky L. v. Comm'r of Soc. Sec.*, No. 20-CV-7102, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022) (ALJ's failure to explicitly evaluate opinion evidence as required by the regulations deemed harmless where court could "adequately glean how the ALJ weighed the consistency and supportability factors for [the medical] opinion" (internal quotation marks omitted)); *see also Elizabeth A. P. v. Comm'r of Soc. Sec.*, No. 5:21-CV-603 (GLS), 2023 WL 2742139, at *2 (N.D.N.Y. Mar. 31, 2023) ("Even assuming that the ALJ's discussion of the supportability and consistency factors was lacking, her determination that Elizabeth can perform light work is still supported by substantial evidence.").

In sum, Plaintiff's arguments boil down to a disagreement with the ALJ's weighing of the evidence, but it is "not the function of this Court to re-weigh evidence or consider *de novo* whether [Plaintiff] is disabled." *Matthew S. v. Comm'r of Soc. Sec.*, No. 21-CV-00220-LJV, 2023 WL 3603671, at *4 (W.D.N.Y. May 23, 2023) (quoting *Teena H. o/b/o N.I.K.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021)); *see also Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."). Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole" and

because the ALJ did just that, the ALJ's RFC determination was supported by substantial

evidence, and this Court will not second-guess it.  *Matta*, 508 F. App'x at 56.

For all the reasons discussed above, the Court finds the ALJ properly and reasonably

considered the entire record, including physical examinations of Plaintiff and other objective

findings, Plaintiff's testimony about his symptoms, his reported daily activities, and the opinions

of record, and the ALJ's findings are supported by substantial evidence.  Further, it is clear to the

Court how the ALJ arrived at the RFC, which is well-supported by the record.  Accordingly,

remand for further administrative proceedings is not required on this basis.

### B.    Past Relevant Work

At step four in the analysis, the ALJ must consider whether the claimant has the RFC to

perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).  In order to survive step

four, "the claimant has the burden to show an inability to return to her previous specific job *and*

an inability to perform her past relevant work generally.  This inquiry requires separate

evaluations of the previous specific job and the job as it is generally performed." *Jasinski v.*

*Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citations omitted).

Here, the ALJ found that Plaintiff could perform his past relevant work as an assembler

as "generally performed."  (T. at 17-18.)  Plaintiff argues the ALJ erred because the VE's

testimony was "unreliable" and did not "factually portray" Plaintiff's past relevant work.  (Dkt.

No. 13 at 21-25; Dkt. No. 16 at 7-8.)  Specifically, Plaintiff maintains his past relevant work as

an assembler was of a higher exertion than the job the VE described, and the record only

contains evidence Plaintiff performed work at the medium exertional level with overhead

reaching.  *See id*.  The Court finds Plaintiff's argument unavailing.

In determining whether a claimant can perform his past relevant work as generally performed, "[t]he inquiry . . . is not whether a claimant is able to perform the duties of [his] previous job, but whether the claimant is able to perform the duties associated with [his] previous 'type' of work." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (finding that plaintiff could perform her prior work as a computer operator because she could perform the sedentary work required of her "previous 'type' of work," even though she could not sit continuously for eight hours as specifically required by her previous job (citation omitted)).

The DOT is used to describe jobs "as they are generally performed." *Jasinski*, 341 F.3d at 185. SSR 00-4p requires that, if there is an "apparent unresolved conflict" between the VE's testimony and the DOT, the ALJ must inquire further and obtain a "reasonable explanation" for the conflict. 2000 WL 1898704, at *2 (Dec. 4, 2000). Under this SSR, a "conflict" exists between the testimony of a VE and the DOT when the two disagree in categorizing and describing the requirements of the job as performed in the national economy. *See Jasinski*, 341 F.3d at 184-85. "Many specific jobs differ from those jobs as they are generally performed [and thus as they are described in the DOT], and the [VE] may identify those unique aspects without contradicting the [DOT]." *Id.* at 185.

The record reflects the VE had ample information about the requirements of the assembler position and how Plaintiff performed it. (T. 34, 268.) Based upon his review of the record and Plaintiff's testimony, the VE characterized Plaintiff's past work as an assembler (DOT # 706.687-010), light exertion level, performed at a medium exertional level, SVP 2. (T. 46.)

The VE was asked whether a hypothetical individual with Plaintiff's RFC and vocational profile could meet the requirements of that position as generally performed in the national

economy, to which the VE replied that he would.  (T. 47-48.)  The VE affirmed his testimony was consistent with the DOT and to the extent that the DOT is silent, such as with overhead reaching, he supplemented his knowledge of how the job assembler was generally performed based upon his education, training, and professional expertise working in the field.  (T. 47-50.)  Notably, the VE explained the position of assembler as generally performed does not require overhead reaching.  *Id.*

The ALJ accepted the VE's testimony and found Plaintiff capable of performing past relevant work as an assembler as generally performed and, therefore, Plaintiff's argument that his testimony showed he could not perform that job as he actually performed it does not undermine the ALJ's finding.  (T. 17-18.)  *See Glessing v. Comm'r of Soc. Sec. Admin.*, 725 F. App'x 48, 49 (2d Cir. 2018) ("The claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally.") (emphasis added); *Nobile v. Comm'r of Soc. Sec.*, No. 16-CV-0871 (DJS), 2017 WL 3054846, at *5 (N.D.N.Y. July 19, 2017) ("A supported finding that a claimant can perform past relevant work as generally performed is sufficient to allow for an unfavorable determination at step four even if the claimant is not able to perform that same work as she actually performed it in the past."); *see also Emser v. Berryhill*, No. 1:16-CV-909 (MAT), 2018 WL 3390255, at *3 (W.D.N.Y. July 12, 2018) (concluding that the plaintiff "provided the ALJ with a sufficiently detailed description of her past relevant work . . . to enable him to consider whether that work was consistent with [the] [p]laintiff's RFC.").

Accordingly, substantial evidence supports the ALJ's determination Plaintiff could perform his past relevant work of "assembler" as performed generally in the national economy.  Remand is not warranted on this ground.

## V.    CONCLUSION

**WHEREFORE**, based on the findings above, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) be **DENIED**; and it is further

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) be **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of this Report-Recommendation on the parties in accordance with the Local Rules.  Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**


Dated:  October 23, 2023
        Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge