UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TIMOTHY C.,

                              **Plaintiff,**

  vs.                                                        5:22-CV-1146
                                                                      (MAD/TWD)

KILOLO KIJAKAZI, *Acting Commissioner*
*of Social Security*,

                              **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **LAW OFFICES OF KENNETH HILLER, PLLC**<br>6000 North Bailey Avenue – Suite 1A<br>Amherst, New York 14226<br>Attorney for Plaintiff | **JUSTIN M. GOLDSTEIN, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION**<br>Office of General Counsel<br>6401 Security Boulevard<br>Baltimore, Maryland 21235<br>Attorney for Defendant | **VERNON NORWOOD, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

**ORDER**

      Plaintiff, Timothy C., commenced this action pursuant to 42 U.S.C. § 405(g) seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying his application for Social Security Disability Insurance Benefits. *See* Dkt. No. 1. In a Report-Recommendation and Order dated October 23, 2023, Magistrate Judge Therese Wiley Dancks recommended that (1) Plaintiff's motion for judgment on the pleadings be denied; (2) Defendant's motion for judgment on the pleadings be granted; and (3) the Commissioner's decision be

1

affirmed.  *See* Dkt. No. 17.  Plaintiff timely objected to the Report-Recommendation and Order and Defendant responded.  *See* Dkt. Nos. 18, 19.

When a party files specific objections to a magistrate judge's report and recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1). "However, when a party files '[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge,' the court reviews those recommendations for clear error."  *Holly S. v. Comm'r of Soc. Sec.*, No. 3:20-CV-597, 2022 WL 580446, *2 (N.D.N.Y. Feb. 25, 2022) (alterations in original) (quoting *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011)).  "When performing such a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 685 (N.D.N.Y. 2015) (citation and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

The parties have not raised any objections to the background or the legal framework set forth in the Report-Recommendation and Order.  The Court therefore adopts Magistrate Judge Dancks's summary of the factual and procedural background and applicable law, and presumes familiarity with those matters for the purposes of this decision.

Plaintiff's objections span twenty-five pages and he "renews the arguments made in Plaintiff's Social Security Brief and in Plaintiff's Reply relating to the ALJ's evaluation of the medical opinions.  Plaintiff objects to Judge Dancks' analysis of the law and facts in relation to the ALJ's assessment of the evaluation of the medical opinions." Dkt. No. 18 at 1 (citations

2

omitted). He argues that "[t]he R&R is based upon clear errors." *Id.* Plaintiff does not contend that the Report-Recommendation and Order should be reviewed *de novo*. Rather, as Defendant states, and Plaintiff concedes, Plaintiff's objections primarily restate the arguments presented to Magistrate Judge Dancks in Plaintiff's brief. *See id.*; *see also* Dkt. No. 19 at 2. As such, the Court will review the Report-Recommendation and Order for clear error.

Plaintiff argues that Magistrate Judge Dancks did not consider his argument that the ALJ erred by failing to discuss the supportability and consistency of four medical opinions. *See* Dkt. No. 18 at 7. The medical opinions were from treating provider Robert Karpman, M.D., consultative examiner Rita Figueroa, M.D., and state agency consultants J. Lawrence, M.D., and G. Ehlert, M.D. Plaintiff contends that "neither the ALJ nor Judge Dancks showed where the factors were applied, and, given that the opinions of Drs. Figueroa and Karpman contain limitations that the vocational expert assessed would eliminate Plaintiff's past work and other light work, the errors are not harmless." *Id.* at 11. Specifically, he states that "Judge Dancks does not address Plaintiff's argument that the supportability factor was not applied to the opinions of Dr. Karpman," "Judge Dancks fails to identify this evidence and how this evidence is insufficient to support the opinions of Dr. Figueroa," "neither the ALJ nor Judge Dancks acknowledge the evidence" Dr. Karpman reviewed, "Judge Dancks does not address the ALJ's application of consistency factor," "Judge Dancks and the ALJ failed to compare this evidence to the opinions of Drs. Karpman and Figueroa," "[n]either the ALJ nor Judge Dancks explain how Plaintiff['s] activities support the ability to 'hold down a steady job for an extended period of time,'" and "Judge Dancks failed to address Plaintiff's argument that the ALJ's analysis of the opinions of Drs. Lawrence and Ehlert were based upon mischaracterizations of the record." *Id.* at 12, 16-17, 19-20.

3

Plaintiff's contentions are belied by Magistrate Judge Dancks's Report-Recommendation and Order insofar as she did discuss all of Plaintiff's arguments. *See* Dkt. No. 17. Plaintiff objects that the ALJ and Magistrate Judge Dancks "cherry-picked" the treatment records. Dkt. No. 18 at 22. First, Magistrate Judge Dancks addressed this argument concerning the ALJ's decision, concluding that "the ALJ's decision reflects a reasonable interpretation of the entire record and the Court finds Plaintiff's arguments unavailing." Dkt. No. 17 at 19. Second, Magistrate Judge Dancks discussed evidence that indicated that Plaintiff's strength and range of motion were normal, as well as evidence that he had reduced ranges of motion. *See id.* at 17. Accordingly, the Court finds no clear error in Magistrate Judge Dancks's Report-Recommendation and Order concerning the recitation of evidence.

As to Plaintiff's activities of daily living, Magistrate Judge Dancks concluded that "the ALJ also properly considered Plaintiff's daily activities and testimony." *Id.* at 18. She stated,

> [a]s the ALJ acknowledged, Plaintiff endorsed the ability to cook, clean, do laundry, shop, and tend to his personal care. (T. 14-17, 435.) In his function report, Plaintiff reported he could walk up to one quarter of a mile at a time and his impairments did not affect his ability to sit or stand. (T. 263.) He also reported difficulty standing for greater than 15 minutes before having to sit; walking more than 100 yards and lifting greater than a gallon of milk. (T. 42.) The ALJ noted Plaintiff lives alone, which also suggested a much higher level of daily functioning. (T. 17.) Thus, Plaintiff's activities of daily living and testimony, as evident from the record, further support the ALJ's finding Plaintiff could perform a reduced range of light work.

*Id.* Earlier in the Report-Recommendation and Order, she explained that light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing . . ." *Id.* at 14 (quoting 20 C.F.R. § 404.1567(b)). It is

4

not entirely clear how Plaintiff's residual functional capacity ("RFC"), limiting him to light work, which can require lifting up to twenty pounds and "a good deal" of standing, is consistent with his testimony that he can carry, at most, a gallon of milk, and he struggles to stand for more than fifteen minutes. *See* Dkt. No. 11, Administrative Transcript ("Tr.") at 15, 42-43. Plaintiff also noted in his function report that he has trouble pulling on his pants and socks and it is hard to bend. *See id.* at 258-29. It is difficult to comprehend how an individual who struggles to bend down and pull on his socks can bend over and lift twenty pounds. The ALJ seemingly explained this incongruence, and Magistrate Judge Dancks referenced "the record" when concluding that the ALJ appropriately relied on Plaintiff's activities of daily living. Dkt. No. 17 at 18.

The ALJ concluded that Plaintiff's "self-reports are not consistent with his allegations of total disability." Tr. at 16. In relevant part, the ALJ noted that Plaintiff stated in October 2020, that he would walk up two flights of stairs and do heavy work around the house including lifting and moving heavy furniture. *See id.* at 17 (citing Tr. at 447, 460, 597). However, it appears that the ALJ may have misconstrued the treatment notes. The treatment notes state, "Able to do heavy work around the house such as scrub floor, lift/move heavy furniture OR CLIMB TWO FLIGHTS OF STAIRS (4-10 METS)." *Id.* at 447, 460. The sentence does not include "and" but instead appears to highlight an ability to climb stairs or lift heavy furniture, not both. *Id.* at 16, 447, 460. Earlier in the same treatment notes, the provider wrote in Plaintiff's subjective history that he could "climb up to 2 flights of stairs without problem." *Id.* at 445, 458. This mischaracterization lends support to the Court's conclusion that there is clear error in the Report-Recommendation and Order.

The Court finds clear error in Magistrate Judge Dancks's Report-Recommendation and Order insofar as she concluded that she could glean the ALJ's rationale concerning application of

the relevant regulatory factors: supportability and consistency. "Supportability" means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). The ALJ did not use the terms supportability or consistency in reviewing the medical opinions. *See* Tr. at 14-15. The Court agrees with Defendant that Magistrate Judge Dancks did discuss this and correctly explained that although the ALJ did not state the regulatory terms, the Court may still affirm the ALJ's decision so long as the ALJ's decision clearly reflects consideration of the relevant factors. *See* Dkt. No. 19 at 2; *see also* Dkt. No. 17 at 21 (collecting cases); *Ryan on Behalf of V.D.C. v. Comm'r of Soc. Sec.*, No. 21-CV-2947, 2022 WL 17933217, *2 (2d Cir. Dec. 27, 2022) (citation omitted) ("Even assuming, *arguendo*, that the ALJ failed to provide an express rationale for his conclusions, we would not be prevented from upholding them so long as we are 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence'"). Magistrate Judge Dancks determined that even if some evidence supported greater limitations, "the ALJ's RFC determination still was supported by substantial evidence." Dkt. No. 17 at 19. She also concluded that "even if the ALJ committed procedural errors as Plaintiff contends, a review of the record, as discussed above, assures the Court that 'the substance of the [regulation] was not traversed' and any error was harmless." *Id.* at 22 (citation omitted).

Dr. Karpman completed two assessments in connection with Plaintiff's state worker's compensation case: one in December 2020 and a second in July 2021. *See* Tr. 865-72, 890-97. In both, he not only examined Plaintiff but reviewed and listed the reviewed medical records before opining on Plaintiff's limitations. *See id.* at 866, 891-92. As Plaintiff states, the ALJ did not acknowledge that Dr. Karpman reviewed various medical records prior to coming to his conclusion. *See* Dkt. No. 18 at 13-16. Magistrate Judge Dancks did recognize that Dr. Karpman "reviewed Plaintiff's medical records," but did not discuss this in her review of the ALJ's analysis of the medical opinion. Dkt. No. 17 at 13. Additionally, both the ALJ and Magistrate Judge Dancks stated that "[w]hile Dr. Karpman indicated that the claimant should avoid lifting greater than five pounds, he had full strength in the upper extremities, and intact hand grip strength. Dr. Karpman also acknowledged that the claimant was capable of performing his activities of daily living." Tr. at 15 (citations omitted); *see also* Dkt. No. 17 at 21. In Dr. Karpman's examination, although Plaintiff had full strength in his extremities and grip, Plaintiff had reduced ranges of motion in both shoulders. *See id.* at 867, 892. The ALJ did not explain why reduced ranges of motion did not support a limitation of lifting no more than five pounds as Dr. Karpman concluded. *See id.* at 15, 868, 893. The ALJ did not discuss Dr. Karpman's examination findings at all and instead cited records from other providers. *See id.* at 15. The ALJ stated, and Magistrate Judge Dancks reiterated, that "Dr. Karpman also acknowledged that the claimant was capable of performing his activities of daily living." *Id.*; *see also* Dkt. No. 17 at 21. This statement is not entirely accurate. Dr. Karpman's 2020 conclusion reads in full: "This individual is capable of working with the following restrictions: avoid lifting more than 5 pounds with the left arm and avoid working above shoulder level with the left arm." *Id.* at 893. His 2021 opinion states: "This individual is capable of performing activities of daily living and working with the

7

following restrictions: avoid lifting more than 5 pounds." *Id.* at 856, 868. Neither the ALJ nor Magistrate Judge Dancks acknowledged that Plaintiff's ability to perform his activities of daily living, as opined by Dr. Karpman in 2021, was significantly limited. *See id.* at 15.

The ALJ stated that he was "less persuaded" by Drs. Karpman and Figueroa's opinions "because the restrictions they identified are contradicted by the diagnostic images in record." *Id.* The "diagnostic images" the ALJ cited indicate that Plaintiff complained that he lost motion and strength, he had "5/5" strength on examination, and reduced ranges of motion. *Id.* at 390, 436. The ALJ did not explain why repeatedly reduced ranges of motions are inconsistent with greater lifting restrictions. *See id.* at 15. Three other records the ALJ cited are from Plaintiff's oncology visits, which noted that he had "no edema" in his extremities but were otherwise silent as to his gait, strength, or range of motion. *See id.* at 621, 629, 751. The ALJ also cited records which indicate that Plaintiff had full motor strength and normal gait, but "+2/4 b/l patellar DTR." *Id.* at 1041, 1044, 1048-49.

Neither the ALJ nor Magistrate Judge Dancks stated that Plaintiff's examinations were completely normal and lacked any objective evidence of limitations. Rather, the ALJ limited Plaintiff to light work with additional limitations because of the abnormalities throughout the record and the opinions from various physicians. The ALJ stated that the "recent physical examinations" were "relatively normal." *Id.* at 15. The ALJ concluded that this evidence supported light work with additional limitations. *See id.* at 15. As Defendant states, it is the ALJ's job to weigh this evidence and it is not the Court's function to reweigh it. *See* Dkt. No. 19 at 4; *see also Warren v. Comm'r of Soc. Sec.*, No. 3:15-CV-1185, 2016 WL 7223338, *9 (N.D.N.Y. Nov. 18, 2016) (citations omitted) (alterations in original) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh

the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather,] [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it'"). However, the ALJ did not explain, and it is not otherwise evident to the Court why repeatedly reduced ranges of motions are inconsistent with greater lifting restrictions and why oncology records are inconsistent with Dr. Karpman's opinion.

Similarly, the ALJ and Magistrate Judge Dancks stated that "Dr. Figueroa found mild to moderate limitations for prolonged walking and standing; yet, she described his gait as normal and strength as normal in the lower extremities." Tr. at 15; *see also* Dkt. No. 17 at 21. Although it is correct that Plaintiff had a normal gait and "5/5" strength in his lower extremities during the consultative examination, Dr. Figueroa also noted that Plaintiff had a reduced range of motion in both of his knees and could "walk on heels and toes however the right knee was weak." Tr. at 435-36. The ALJ did not discuss those limitations or explain why those objective findings did not support greater limitations in prolonged walking and standing. *See id.* at 15. Magistrate Judge Dancks is correct that the ALJ does not need to discuss every single piece of evidence in the record, but especially in terms of the supportability factor, the ALJ did not discuss whether Dr. Figueroa's examination supported his conclusions, and it is not evident from the ALJ's decision or the record why reduced ranges of motion in the knees and a week right knee would not support greater walking or standing limitations. *See* Dkt. No. 17 at 20.

Further, the ALJ found Drs. Lawrence and Ehlert's opinions to be persuasive and concluded that Dr. Ehlert's opinion was "more persuasive . . . because he had more records to review at reconsideration." Tr. at 14. Neither consultant had Dr. Karpman's 2021 opinion to review because they issued their opinions before Dr. Karpman issued his report, and neither listed

9

Dr. Karpman's 2020 opinion in the evidence they considered in determining Plaintiff's RFC. *See id.* at 66, 88, 868, 893. The ALJ and Magistrate Judge Dancks relied on Drs. Lawrence and Ehlert's conclusions that Plaintiff could lift at least twenty pounds. *See id.* at 14, 62, 85. Yet, neither acknowledged that the consultants did not consider Dr. Karpman's opinions which limited Plaintiff to only lifting five pounds. Neither discussed how that might have changed Drs. Lawrence and Ehlert's conclusions.

In a separate paragraph of his decision, the ALJ set forth many of the treatments notes which indicated normal findings aside from reduced range of motion primarily in Plaintiff's left shoulder. *See id.* at 15-16. He concluded that "the physical examinations in record support the conclusion that the claimant could perform a range of light work." *Id.* at 15. Although Plaintiff had intact grip strength and motor strength, Dr. Karpman concluded that reduced ranges of motion resulted in a limitation in Plaintiff's ability to lift objects. *See id.* at 868, 893. It is not obvious to the Court why intact grip strength or a normal gait negates that conclusion. As explained, the ALJ noted that Plaintiff could "walk up two flights of stairs, and do heavy work around the house, such as scrubbing floors, and lifting and moving heavy furniture." *Id.* at 17 (citing Tr. at 447, 460, 597). However, that explanation appears to be a mischaracterization of the treatment records which indicate that Plaintiff could walk up the stairs, but not necessarily lift heavy furniture. *See supra* at 5.

The Court agrees that where there is substantial evidence in the record supporting a plaintiff's and an ALJ's conclusions, the Court must side with the ALJ. *See* Dkt. No. 19 at 21; *see also Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-01314, 2023 WL 3004780, *4, n.1 (N.D.N.Y. Jan. 5, 2023) (citations omitted) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is

enough that the ALJ applied the proper legal analysis").  However, Magistrate Judge Dancks committed clear error in her decision when analyzing the ALJ's discussion of the medical opinions and the relevant factors.  The ALJ did not (1) discuss that Dr. Karpman reviewed medical records, (2) discuss why Dr. Karpman's and Dr. Figueroa's examination findings do not support their opined limitations, (3) acknowledge that the records she cited concerning normal findings also evidence range of motion limitations or do not concern physical limitations at all; and (4) explain why the examinations and records which evidence persistent range of motion limitations would not impact Plaintiff's ability to lift as opposed to only his ability to reach.  Magistrate Judge Dancks repeated many of the ALJ's statements but did not explain how the rationales reconciling the inconsistencies are clear from the record.  Rather, the Court cannot glean the ALJ's rationale in reconciling those issues from the entire decision or record.

     This is especially problematic where the ALJ found the two consultants' opinions who did not examine Plaintiff to be more persuasive than the two individuals who did examine Plaintiff (one of whom examined Plaintiff, twice, seven months apart).  It is true that "state agency consultants are qualified experts in the field of social security disability," Dkt. No. 17 at 14 (citations omitted), but courts have cautioned that "the ALJ may not credit a non-examining physician's opinion over that of a treating physician's where the non-examining physician's opinion considered less than the full record and the subsequent medical evidence may have altered the opinion."  *West v. Berryhill*, No. 3:17-CV-1997, 2019 WL 211138, *5 (D. Conn. Jan. 16, 2019); *see also Avila v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-1360, 2021 WL 3774317, *20 (S.D.N.Y. Aug. 9, 2021) ("Dr. Kwok, however, never examined [p]laintiff, and assigning significant weight to the opinion of a non-examining medical expert – over the opinions of examining experts – can constitute error").

As supportability and consistency are "the most important factors" Magistrate Judge Dancks's error in concluding that the ALJ's consideration can be gleaned from the ALJ's decision requires remand.  20 C.F.R. § 404.1520c(b)(2); *see also Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891, 2022 WL 507367, *10 (N.D.N.Y. Feb. 18, 2022) (citation omitted) ("Without discussing whether Dr. Kahn's 'objective medical evidence and [ ] explanations'—the severe pain, tenderness, spasms, and limited range of motion reflected in Dr. Khan's records—supported his opinion, the Court disagrees that the ALJ's failure to discuss supportability is harmless error"); *Malia Ann B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-136, 2023 WL 2838054, *5 (N.D.N.Y. Feb. 23, 2023) ("Although the ALJ acknowledged the less than normal examination findings at step three, the ALJ did not explain at step three or four, why Dr. Miller's findings do not support his conclusions where he determined that the areas that plaintiff struggled with on examination were the categories that she was more severely limited"); *Navedo v. Kijakazi*, 616 F. Supp. 3d 332, 346-47 (S.D.N.Y. 2022) (citation omitted) ("In his assessment of the opinions of LCSW McAllister, NP Radomile, and Dr. Eshkenazi as 'not persuasive' because they were 'inconsistent with treatment records and mental status exams,' the ALJ failed to consider how the providers' own mental status examinations supported their conclusions").

The error is not harmless as to Dr. Karpman's opinion.  The Vocational Expert identified assembler as a job that Plaintiff could perform, which requires "[e]xerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time)" and "[e]ven though the weight lifted may be only a negligible amount, a job . . . rated Light Work" can require "walking or standing to a significant degree."  Dictionary of Occupational Titles ("DOT"), 706.687-010, Assembler, Production, 1991 WL 679074; *see also* Tr. at 46, 48.

Magistrate Judge Dancks explained that "Dr. Figueroa assessed no more than moderate limitations in exertional and postural activities, which further lends support to the ALJ's RFC" because "'[c]ourts in this circuit have consistently found that moderate limitations in a plaintiff's ability to perform exertional activities are consistent with an RFC for light work.'" Dkt. No. 17 at 15 (quoting *Ruiz v. Comm'r of Soc. Sec.*, 625 F. Supp. 3d 258, 268 (S.D.N.Y. 2022)). The Court agrees that even if the ALJ adopted the most restrictive parts of Dr. Figueroa's opinion, the RFC would not likely change. Thus, the errors in articulating consideration of the relevant factors as to Dr. Figueroa are harmless. However, Magistrate Judge Dancks did not perform such an analysis of Dr. Karpman's five-pound limitation. *See id.* at 15-17. If the ALJ were to adopt Dr. Karpman's limitation to lifting no more than five pounds, Plaintiff's RFC could potentially change. Although the DOT definition for assembler indicates occasional lifting of twenty pounds, the ALJ did not ask the Vocational Expert about Plaintiff's ability to work if he was limited to lifting no more than five pounds. *See* Tr. at 47-50. Thus, if the ALJ were to adopt a greater lifting restriction, it is possible that Plaintiff could not perform the assembler position. This is an error requiring remand.

  After carefully reviewing the Report-Recommendation and Order, the entire record in this matter, and the applicable law, the Court hereby

  **ORDERS** that Magistrate Judge Dancks's Report-Recommendation and Order (Dkt. No. 17) is **ADOPTED in part and REJECTED in part** for the reasons set forth herein; and the Court further

  **ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and the Court further

**ORDERS** that the Commissioner's decision denying disability benefits is **REVERSED** and this matter is **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Order; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiff's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: December 13, 2023
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge